IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2007

## STATE OF TENNESSEE v. ANTHONY TYRONE ROBERTSON

## Appeal from the Circuit Court for Montgomery County
No. 40000047     John H. Gasaway, III, Judge

_____

### No. M2006-01679-CCA-R3-CD - Filed May 30, 2008

_____

The Defendant, Anthony Tyrone Robertson, appeals from the order of the Montgomery County Circuit Court revoking his probation. In July of 2000, the Defendant pled guilty to sexual battery and received a six-year sentence as a Range III, persistent offender. The sentence was suspended following service of one year in the county jail, and the Defendant was placed on probation. On July 16, 2004, a warrant was issued, wherein it was alleged that the Defendant violated the conditions of his probation. The warrant was twice amended to include additional violations. After a hearing, the trial court concluded that the Defendant violated the conditions of his probationary sentence and ordered that his original six-year sentence to the Department of Correction be reinstated. On appeal, the Defendant argues that the trial court abused its discretion by revoking his probation and ordering that the remainder of his sentence be served in confinement. After a review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Edward DeWerff, Clarksville, Tennessee, for the appellant, Anthony Tyrone Robertson.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; John W. Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On July 19, 2000, the Defendant entered a plea of nolo contendere to an amended charge of sexual battery, a Class E felony. See Tenn. Code Ann. § 39-13-505.[1] The remaining three counts were dismissed. Pursuant to the negotiated plea agreement, the Defendant received a sentence of six years as a Range III, persistent offender. The sentence was suspended following service of one year in the Montgomery County Jail, and the Defendant was placed on probation. He was also ordered to attend the "sex offender program . . . ."

On December 9, 2003, the Defendant admitted to violating the conditions of his probation, and the trial court revoked his probation. The Defendant was ordered to serve 180 days in jail, followed by a return to probation at the conclusion of his incarceration.

On July 16, 2004, a violation warrant was issued, wherein it was alleged that the Defendant had violated the conditions of his probation by failing (1) to inform his probation officer of a change in residence, (2) to report to his probation officer for supervision, and (3) to attend the sex offender treatment program as ordered. The warrant was amended on August 13, 2004, to include the additional violation of failure to obey the law by "committ[ing] the Offense of Rape on July 22, 2004." The warrant was further amended on February 23, 2005, to include a new charge of felony murder.

On July 27, 2006, a probation revocation hearing was held. Brian Rives, the Defendant's probation officer, testified that he was assigned to supervise the Defendant in 2004. Mr. Rives testified that the original warrant stated the Defendant "changed residence without permission, that the offender failed to report to Officer Maxey . . . , and he failed to attend and complete the sex offender treatment program . . . ." Regarding the first amended warrant, Mr. Rives stated that "a charge of rape was added." Mr. Rives testified that a charge of felony murder was included in the second amended warrant. Mr. Rives testified that, as to the rape charge, the Defendant was convicted by a jury of the "amended charge of assault." A certified copy of that conviction was entered into the record as evidence. According to Mr. Rives, the Defendant was acquitted of the felony murder charge.

Regarding the Defendant's change of residence without permission and his failure to report to his probation officer, Mr. Rives testified that the Defendant

> reported an address of the Oak Haven Motel. He failed to report to the Probation Parole Office. He had an appointment on June 25th, 2004. On June 6th (sic) of 2004, Officer Maxey went to verify, to check on [the Defendant] and he was verified through the—I guess the hotel administration that he was asked to leave the

---

[1] The transcript of the guilty plea hearing is not included in the record on appeal.

-2-

premises—or asked to check out of the premises and they had no forwarding address.

. . . .

. . . [The Defendant] had an appointment to report on June 25th, 2004. He failed to keep that appointment. Officer Maxey went through the proper channels of trying to contact him by phone, then went and did the home visit, where he learned he had moved.

Mr. Rives testified that the Defendant was arrested for rape approximately thirty days after he failed to report to his probation officer. Also according to Mr. Rives, the Defendant "failed to report . . . and continue" his sessions with the "sex offender board treatment program."

The Defendant then testified on his own behalf. He stated that, following his release from jail in 2003, he began receiving sex offender treatment with a doctor. Regarding his failure to maintain this treatment, the Defendant stated that the doctor informed him he "had to come up with a fee of five hundred dollars." The Defendant then spoke with his probation officer and told him that he could not afford such a fee. According to the Defendant, he was faced with "limited options" and "couldn't afford to pay that like that." The Defendant testified, "No, I didn't quit going. I just—when he told me to do something—I made an appointment with the doctor but turned around—when I changed jobs, he didn't want to work with me where I can go around my job schedule . . . ." The Defendant admitted that, thereafter, he did not see his doctor anymore.

The Defendant also stated that he moved from the hotel because he "had no choice at the time . . . ." He testified that he "had to leave there and . . . had to find some place quick, so [he] stayed with a friend for a couple of days until [he] could get enough money to get back into another hotel." According to the Defendant, his probation officer was aware of this information. The Defendant admitted that he failed to report to his probation officer on June 25, 2004, but reasoned as follows:

That was one time, because I was going every other week to see my probation officer, that's just because they was supposed [sic] to have transferred it back to Chicago and they never did transfer it back. He wanted me to come every other week to see him, in case I had to sign some papers.

The Defendant testified that he was arrested on July 28th, 2004, and that he had been continuously incarcerated since that time.

At the conclusion of the proof, the trial court revoked the Defendant's probation, reinstated his original six-year sentence, and remanded him to the Department of Correction, concluding as follows:

[The Defendant] was on a release status starting on July 19th, 2000—well, actually starting after he completed the one year of confinement that was split out of

a six year sentence. After he finished that confinement, he was on a release status and that release status was probation. And while on probation, the evidence here today based on the preponderance of the evidence standard, which is the standard used at a hearing such as this, he did fail to report as ordered and he was convicted by a jury of assault. And here recently, the felony murder charge that was added as a violation by an amendment to the original warrant, that issue was resolved by a jury with an acquittal here recently. The trial starting on July 20th, 2006 and it was under case number 40500132. This Court conducted that trial and while the Court can understand, based on the evidence presented, how the jury could have a reasonable doubt as to the guilt of [the Defendant], as I say, the standard here is preponderance of the evidence and the evidence that this Court heard of that felony murder trial showed by a preponderance of the evidence that [the Defendant] both assaulted and caused the death of Marianne Racine while strangling her to death. So, because of the assault and this Court's finding by a preponderance of the evidence, that he did those acts, he is ordered to serve out the balance of this sentence, whatever it is in confinement in the Department of Correction.

An order of revocation was entered on July 27, 2006. It is from this order that the Defendant now appeals.

**ANALYSIS**

The Defendant contends that the evidence adduced at the hearing did not support revocation of his sentence. Specifically, the Defendant argues as follows:

> The only two reasons that the Trial Court used to justify revoking [the Defendant's] probation was that [the Defendant] was convicted of assault and that the Court found that [the Defendant] assaulted and caused the death of Marianne Racine . . . . There was absolutely no evidence presented during the violation of probation hearing with respect to the alleged killing of Marianne Racine and therefore it was improper for the Trial Court to consider that evidence. [The Defendant] previously acknowledged that he was convicted of assault by a jury while on probation.

> The [Defendant] respectfully submits that this is a minor transgression of the terms and conditions of his probation and respectfully request[s] this tribunal to reverse the Trial Court[']s decision.

A trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

-4-

When a probation revocation is challenged, the appellate courts have a limited scope of review. This Court will not overturn a trial court's revocation of a defendant's probation absent an abuse of discretion. Shaffer, 45 S.W.3d at 554. For an appellate court to be warranted in finding that a trial judge abused his or her discretion by revoking probation, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id.

The Defendant argues that the trial court erred by considering evidence adduced during the Defendant's felony murder trial, when the State did not attempt to present such evidence at the revocation hearing and the trial court relied upon its own familiarity with the trial. Regardless of the propriety of considering evidence from the Defendant's felony murder trial, we conclude that there was substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation occurred. The Defendant breached his agreement that he would obey the law. He was convicted of assault while on probation, and a certified copy of the judgment of conviction was entered into evidence at the hearing. Moreover, the Defendant admitted that he failed to report to his probation officer and failed to attend treatment in the sex offender program. Mr. Rives testified that the Defendant violated the conditions of his probation by failing to report, failing to attend sex offender treatment, and failing to inform his probation officer of a change in residence.

Finally, we note that the Defendant has been through at least one prior revocation hearing and given more than one chance at serving his time under a suspended sentence. Despite attempts by the trial court to rehabilitate the Defendant, the Defendant has consistently failed to meet the requirements of his probation. The trial court was statutorily authorized to reinstate the Defendant's original six-year sentence. Tenn. Code Ann. §§ 40-35-310, -311(e), -36-106(e)(4).[2] Accordingly, we conclude that the trial court neither erred nor abused its discretion by revoking the Defendant's probation.

**CONCLUSION**

Based upon the foregoing, the judgment of the Montgomery County Circuit Court revoking the Defendant's probation and ordering reinstatement of his six-year sentence in the Department of Correction is affirmed.

_____
DAVID H. WELLES, JUDGE

---

[2] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crime in this case occurred prior to June 7, 2005, and the Defendant did not elect to be sentenced under the provisions of the Act by executing a waiver of his ex post facto protections. See 2005 Tenn. Pub. Acts ch. 353, § 18. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crime was committed.